Will the clerk please call the next case? 3-22-0360 Paul Allen Larson and Cynthia Larson, Appellees v. Illinois Central School Bus, LLC, Appellants. Ms. Green, you may proceed. Good morning and may it please the court, my name is Ellen Green and I represent the appellant, Illinois Central School Bus. We are appealing the denial of our motion to dismiss plaintiff's personal injury action based on the doctrine of interstate form non-convenience and we're asking this court to find that the trial court abused its discretion in denying the motion. The trial court was tasked with deciding whether the relevant private and public interest factors weighed strongly in favor of dismissal, in favor of a Texas forum, and it determined that dismissal was not warranted. Now under the abuse of discretion standard that this court will apply, it should ask, is the trial court's ruling one that no reasonable person would make or is the opposite conclusion clearly evident from a review of the evidence? The answer is yes. On these facts and this record, the only reasonable conclusion to be drawn is that the relevant private and public interest factors strongly favor dismissal of this case in favor of the Texas forum. Now as you are no doubt aware, there's lots of published cases addressing both intrastate and interstate form non-convenience motions and each case turns on the unique set of facts that are before the court. What's notable here is the overwhelming number of significant contacts between this dispute in Texas and the limited contacts and limited interest of Illinois in what is a localized Texas controversy. All of the private interest factors are addressed in our briefs, but I'm going to focus on a couple of issues that highlight the highlights the trial court's abuse of discretion. And the first issue is the access to testimonial evidence. The trial court heavily discounted the location of the majority of potential witnesses in Texas. And I quote, since COVID, we have relied extensively on Zoom to obtain witnesses testimony, both for discovery and trial, unquote. Now it's undisputed that the majority of witnesses are in Texas. Two central witnesses in this case are the defendant's bus driver and the aide that both reside in Texas. And the defendant, Illinois Central, is allegedly vicariously liable for their conduct. The plaintiffs are Texas residents. Other witnesses that are identified in discovery responses and affidavits are in Texas and these include the post-occurrence witnesses, which consisted of teachers and other employees of the minor school. They're in Texas. The minor's medical providers are overwhelmingly located in Texas. None are in Illinois. The bus dispatcher, defendant's employees who supervised and trained the bus driver and the bus aide and those who investigated the incident and inspected the bus are all in Texas. Yet despite the presence of all these witnesses in Texas, the trial court relied on the availability of Zoom for trial to find that access to this evidence only slightly favored transfer. We're now in a post-COVID era and a lot has changed in terms of how court proceedings are conducted, including this doesn't mean that there's no longer any value to in-person testimony at trial in terms of a juror's ability to assess a witness's credibility or simply a juror's level of engagement. Substituting Zoom testimony for in-person testimony can't really be compared to substituting electronic records for paper records. In-person trial testimony still has inherent value such that the convenience of having a trial in Texas where the relevant witnesses are located can't be dismissed simply by the availability of Zoom. Now as the parties were briefing this appeal, the Supreme Court did revise Rules 45 and 241 and that's a fact the plaintiffs rely on in their appellees brief. Now Rule 45 applies to court appearances generally and the newest version allows case participants including the parties and witnesses to appear in court proceedings by video without advanced approval from the court. But the rule has an exception and that's subsection C for evidentiary hearings, bench trials, and jury trials. These are instead addressed in Supreme Court Rule 241. Supreme Court Rule 241 applies to trials and evidentiary hearings and the newest version allows witnesses to testify remotely where the court's approval is required if good cause is shown. Now admittedly, according to the comments to Rule 241, good cause can include a witness's distance from the courthouse. However, the comments to Rule 241 also state, quote, the presentation of in-person testimony remains of utmost importance in trial and evidentiary hearings described in Rule 45C, unquote, which is entering that exception to Rule 45 that allows remote appearances without advanced approval. So although a trial judge can make exceptions to in-person testimony upon a showing of good cause, the Supreme Court has made it clear in-person testimony remains of the utmost importance. Now given the Supreme Court's preference for in-person testimony, the trial court improperly assumed that the Texas witnesses, and there are many, will testify remotely at trials simply because they are a great distance from the Will County Courthouse. In light of the importance of in-person testimony, the accessibility of testimonial evidence factor weighed heavily in favor of dismissing this case in favor of a Texas forum, not slightly as the trial court found. The second issue on the private interest factors is the location of defendant's witnesses. The trial court concluded that the convenience of the parties favored keeping this case in Illinois and that the cost to secure the attendance of willing witnesses was neutral because defendant has its place of business, principal place of business in Illinois, and allegedly most of defendant's witnesses or business principals are here in Illinois. But we did not identify any Illinois witnesses in plainest answers to the forum interrogatories. They only identified a corporate representative of Illinois Central, but without identifying any topic of anticipated testimony. May I interrupt? In your brief, you have what I might characterize as a somewhat truncated definition of the word implement, but to that point, you seem to discount completely the idea that the person who developed this protocol or whatever policy, whatever you want to call it, for let's say safely securing wheelchairs and a bus or however you put it, that that's not an issue. But isn't it a possibility that that is an issue and it isn't just a question of whether the aid or the bus driver properly secured the wheelchair, but rather that the policy defining how you should do that might be negligent or part of the cause of these injuries? I ask that because that would put a couple of witnesses obviously in Illinois. Well, you're talking in terms of possibility. Well, that's not what the complaint alleges, and we shouldn't be forced to... Well, that's because of the way you define implement, but... Well, I'm just relying on the dictionary definition as well as the context in which it's listed as that the Illinois Center was negligent in failing to implement policies and procedures pertaining to safely transporting children such as BL, failing to properly train the drivers and aides, which we have facts supporting that that's occurred in Texas, failing to properly secure this minor's wheelchair, et cetera, et cetera. Implement means to carry out. They don't allege that we didn't have any safety procedures, and there's nothing on this record to support that these policies would have been made or were made at the corporate level in Joliet. The only thing that number of times in their brief, it's set page 290 of the supporting record. And if you look at page 290 of the supporting record, what that is, is the plaintiff's response brief to our motion to dismiss. And in there, they say that these witnesses, and I think they said the director of safety and director of fleet, which I believe these are just team members that are on the corporate website. Well, they said that these witnesses, quote, possess critical knowledge concerning the company's nationwide safety policies and procedures, as well as Illinois buses training, technology, and safety enhancement implementation across the country. And that's just a bold statement. There's no supporting affidavit. There were no interrogatories responses on that issue. It's pure speculation, and that really is not enough. It's particularly without an allegation of corporate wrongdoing to keep this case in Illinois. And if that's all it takes, any accident occurring in any state in which Illinois Central may be operating buses, and this could have happened to any corporation in Illinois. There's an accident in Texas. There's an accident in Minnesota. Oh, well, this accident must have occurred because somebody in corporate didn't have the proper policy in place. It's just a bold assertion. There's no evidence or any sort of factual connection to make this witness, or these proposed witnesses, relevant witnesses on these pleadings. Well, the forum non-convenience motion necessarily comes prior to the type of discovery that might be engaged in to show one way or the other that this might or might not be the case. And the case is recognized that there's a certain latitude, correct? Yes, and at the same time, Rule 187 also provides, and I'll just take you know, that you can support your Rule 187 motion with affidavits. I was just reading. Such motions may be supported and opposed by affidavit in determining issues of fact raised by affidavits. Any competent evidence adduced by the parties shall also be considered. And this isn't competent evidence. It's just speculation as to who, you know, what these individuals would testify to or what knowledge they have, or assuming that people in Joliet are deciding, you know, that they didn't have any safety measures in place for securing a wheelchair for special needs students. Plaintiffs have the ability to conduct forum discovery, and we realize it's not very far along in the case, and discovery has not been fully developed. But at the same time, it's not even in their complaint. This isn't about corporate decision making or making allegations about individuals or a director of fleet, director of safety, that could have been pled, and they weren't. It's just direct negligence and vicarious liability against Illinois Central for the identical allegations of negligence that are just copied and pasted throughout the complaint. The other issue is the public interest factors. The trial court recognized that Texas had the interest in deciding all issues locally, but then the court went on to conclude that it wasn't fair to impose a burden, the burden of jury duty on the residents of Will County, because defendant is headquartered here, and the court thought that the jury might want to hear about this, is this quote. Well, while defendants headquartered in Illinois, the allegations of the complaint relate to what defendant did or did not do through its employees in Texas. Again, there's no allegations in the complaint of negligence in corporate decision or corporate policy making by corporate officers in Joliet. This was an afterthought that was put in plaintiff's response to the motion to dismiss, and which the trial court adopted in making its ruling. The burden of hearing this case in Will County is not unsubstantial. Jurors are going to be asked to take time off of work or their regular lives to hear this case. And as they listen to the testimony from a parade of Texans about events and alleged negligent acts that occurred in Texas and how they affected the Texas plaintiffs, a juror might rightly wonder, why do we have to be here? Yes, the red light is on. You will. Oh, I'm sorry. I don't see that. I'm in reply. Oh, that's this thing. Okay. I apologize. Are there questions from the bench? No questions. No questions, Judge. Okay. I just have a question. When you were talking to public interest factors, which factor, again, I missed it, were you addressing at the end? The burden of hearing this case in Will County, particularly on the jurors who may be watching this essentially on TV about events that occurred in Texas, and this burden is also borne by the local courts and the local taxpayers. Did the trial court conclude that they favored one or the other? I believe, just so I could tell you real quick. Yes. This is the public. The court said the unfairness imposing a burden of jury duty on the folks of Will County, given the fact that, and the nature of this accident, which, as I recall, was a bus which was used to be transporting special needs children, wheelchair became insecure and tipped over. Given the fact that central bus is here in Illinois, I think a Will County jury might want to hear about this. It didn't really assign any weight. No, I think those factors are neutral. Right? I believe that it paves the way for the trial court. I would say that my interpretation of this is that the trial court determined that it favored keeping the case in Illinois, but that's in the context maybe of all the public interest factors. Again, the court is to look at all the factors together, and on balance, did these factors strongly favor? That's correct. You're parsing it out, the public interest factors. Yes, I'm just highlighting the issues that we think relate through things off balance. You'll have time in reply, Ms. Green. Yes, thank you. Ms. Gorkowski, you may respond. May it please the court, Pamela Davis Gorkowski for the plaintiffs, Appleese, Paul Larson, Cynthia Larson, and the minor, BL. I'm going to start with some of the issues that the court's been talking about, including what's been pled and the effect of Zoom on these proceedings. I'd like to point out that, as you know, there's deference given to the plaintiff's choice, and where the plaintiff doesn't reside in the chosen forum, it's just given some deference. The trial court gave some deference to the plaintiff's choice, and under Lang and Horst and Petrie, that's within the court's discretion. The defendant, its principal headquarters are in Illinois. The CT Corporation in Chicago, Illinois, is its authorized agent for accepting service, so they opened themselves up to being in Illinois for service, and it was understated in counsel's argument regarding who those witnesses are in Will County that were disclosed. One is the director of safety, training, and risk management, and the other is the director of fleet. Ms. Gorkowski, back to the same issue. I know I commented on perhaps a more restricted interpretation of the word implement, but in fairness to the defense, when I look at the complaint, you don't seem to really be alleging negligence in creating the policy or the practice or the manual, whatever it is. The thrust is focusing on the negligence that happened down in Texas in terms of implementing whatever this policy was. The complaint doesn't seem to focus on a negligent policy, and if that's really the case, it seems to me that you basically, other than the corporation being here, almost nothing touches on this forum. Your Honor, a couple things. Implement can be used broadly to adopt. Secondly, a policy could be implemented in Illinois or in Texas, and failure to train or to require training could be in Illinois or in Texas. Importantly, this issue wasn't raised in the trial court, whether there were adequate allegations of, let's call it institutional negligence. That was never raised by the defendant in the trial court, and if it had been, the plaintiffs could have said, let us amend our complaint to make it forfeited, and nevertheless, the pleadings are broad enough to include a failure to implement a policy for safety of this minor in Texas. That reasonably could have happened in Will County, the failure to implement a policy, and to parse it out on appeal without giving the plaintiffs a chance to discuss it in the trial court is barred by forfeiture rules. We can look at the plain language in the complaint in ascertaining that question, can't we? I mean, even if it wasn't argued in the trial court, I mean, the language in the complaint, the allegations in the complaint can inform our analysis, right? The allegations of the complaint should inform your analysis, and the allegations of the complaint is that there was failure to implement policies and procedures pertaining to safely transporting children. Again, this is after discovery, this is before discovery, and that's put somebody on plain notice that there were improper, inadequate policies and procedures implemented pertaining to safely transporting the child. That could have occurred in Illinois where the director of safety and training works and resides. Would your position be stronger if you would use the verb created and then say unimplemented? Justice Holdridge, yes, we would wish we had said that, and again, if this had been raised in the trial court, that's all we would have to do, create it and implement it. But implemented is a broad enough word that it can include the failure to take on policies and procedures pertaining to safely transporting the child. And again, in fairness to the plaintiffs, this shouldn't be raised for the first time on appeal because we could have just added a few words, as Justice Holdridge pointed out. Or your position is that implemented is broad enough, you can't implement something that's not created. Well, right, you can't implement something that's not created, so if it's not created, it's not implemented. I believe in accord with what Justice Holdridge said, implement can broadly, I don't mean to say that's what Justice Holdridge said, but under this analysis, implement could include a failure to create, a failure to implement could include a failure to create. That's what was intended, and that's basically what it says. And this was a simple thing that could have simply been amended in the trial court if it were raised, and it's improper to raise it on appeal. Regarding the effect of Zoom, the plaintiff argued in their brief that the ruling virtually eliminated access to testimonial evidence. Well, first of all, we know that Zoom is a relevant consideration in this matter. Rule 241 authorizes Zoom testimony in certain circumstances. Other appellate courts have pointed out that Zoom is a relevant factor. We've cited those cases, and Judge Rickman said that in his experience as the head of the civil division, that he's used Zoom in both trials and hearings. But the ruling doesn't limit access to testimony, and that's particularly true here, where the defendant hasn't identified any witness who is unwilling to testify in Illinois. And so the cases require that, that you have to have someone that says, I'm not willing to testify in Illinois. The defendant has the burden of proof, and they have not alleged that anybody is unwilling to testify in Illinois. And the situation is the who was unwilling to testify. I think that we can safely assume that the Director of Safety, Training and Risk Management, and the Director of Fleet have relevant information regarding the creation and implementation of the policies and procedures regarding transporting a disabled child in a wheelchair. I think we can assume that the Director of Fleet has relevant knowledge regarding the mechanisms in the bus, in a bus, regarding transferring a child in a wheelchair. So I don't think that the issue is whether there's critical knowledge or, and I don't think it's speculation that these witnesses would have some relevant information on the core issues in this case that were adequately applied. So the trial court adequately considered all the factors, the trial court, and he considered each factor within his discretion. He made, he denied the motion within his sound discretion. If there's any, if there's just a reasonable dispute about whether the decision was correct, it should be affirmed under the case law. And it was the defendant who had the burden of proof that this is an inconvenient forum and that Texas is a better forum. And in light of the fact that there are relevant witnesses in Illinois under the allegations of the complaint, just the holding should be affirmed. Does that conclude your argument? Yes, Your Honor. Okay. Questions from the, from the bench? Not for me. No, don't believe there are. Thank you. Thank you. Ms. Green, you may reply. Yes. On behalf of Illinois Central, I first want to address what plaintiffs are calling a waiver argument. This issue of where the negligence occurred as alleged in the complaint was raised in the trial based on just a fair reading of the complaint of just a common person's understanding of failure to train, failure to secure the minor in his wheelchair, failure to implement policies that the negligence was in Texas. And on appeal, we just highlight what those specific allegations are in the use of the word implement. But this issue was raised and this is sufficient to avoid a waiver. And even if it could be considered a waiver, it's a limitation on the parties and not the court. I want to address some of Ms. Gorkowski's comments about first with the director of safety and the director of fleet. They state that these witnesses were disclosed and when they use the term disclosed, it was not in the context of an answer to interrogatories. It was just that they were identified in plaintiff's response to the motion to dismiss. And it was not a formal disclosure. Uh, uh, as far as the training and the implementation of policies, uh, Ms. Gorkowski states that this could be an Illinois, it could be in Texas, uh, could be is not what the court should be looking at when they are ruling on a motion under rule 187. Uh, it's helpful to have allegations of in the complaint and facts and affidavits to support where it's, as we supported our motion with, uh, facts as to where the relevant witnesses that trained the bus aid and, uh, the driver, which was in Texas, where the bus was inspected, where these individual supervisors were located. These were in Texas. Uh, plaintiffs did not support their opposition with any sort of affidavits or factual material of that nature. Um, uh, she also mentioned that, uh, we haven't for trial. Uh, there's also an issue of willing witnesses. If there's an expense to have, if there is an in-person trial, there's an expense involved in bringing all these people to Illinois for trial. So it applies to both willing and unwilling witnesses. And the majority, if not all of those witnesses are located in Texas. Um, and I just want to emphasize that we don't have to show that the trial court abused its discretion as to each and every private and public interest factor that a court can consider. We only need to show that the trial court abused its discretion in concluding that the balance of private and public interest factors did not weigh strongly in favor of dismissal. Defendant met its burden to show that the balance of these factors strongly favored dismissal, but the court was apparently misled by plaintiff's focus on the location of defendant's corporate headquarters, which is the only contact this case has to Will County and speculation as to the potential testimony of corporate officers. Um, so in conclusion, the trial court abused its discretion in denying our motion to dismiss given the overwhelming context with Texas. And we ask that the trial court's order of August 11, 2022, 2022 be reversed. Thank you. Questions from the bench. Not for me. Okay. Thank you. Council both for your arguments in this matter this morning. It will be taken out of advisement and written disposition shall issue.